IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARLON H VAN HOOK,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**DR. GREEN,**<br>**NURSE JENN,**<br>**NURSE BONNIE, and**<br>**CAPTAIN COLLINS,**<br><br>        **Defendants.** | Case No. 25-cv-00519-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Marlon Van Hook, an inmate in the custody of the Federal Bureau of Prisons currently being held at Federal Correctional Institution Terre Haute, commenced this civil action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392 (1971) (28 U.S.C. § 1331) and the Federal Tort Claims Act (28 U.S.C. §§ 1346, 2671-2680) for failing to properly treat his skin condition while he was at the St. Clair County Jail. (Doc. 1). This case is now before the Court for screening of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *Id.*

### THE COMPLAINT

Plaintiff alleges that he has a skin disease that causes his skin to burn and itch. (Doc. 1, p. 7). Prior to his arrival at St. Clair County Jail, his condition was being treated successfully at the Jefferson County Jail with a medicated soap. (*Id.* at p. 10). Plaintiff was transferred to St. Clair County Jail on August 27, 2024. Upon his arrival, Sergeant Moore told Plaintiff that he could not

have his soap because the bottle did not have a label. (*Id.* at p. 7). Sergeant Moore informed Plaintiff that the soap would be stored with his personal property. Eventually, Plaintiff used all the creams that came with him from Jefferson County Jail, which alleviate skin irritation, and he was not provided any refills. (*Id.*).

Around, October 20, 2024, Plaintiff saw Dr. Green, and he explained that he has a skin condition that causes "burning, itching, bitting, and twitching from [his] shoulders up." (Doc. 1, p. 7, 10). Dr. Green stated that she would contact the medical staff at the Jefferson County Jail and "get back to [him.]" (*Id.*). Plaintiff also told Dr. Green that the U.S. Marshals Service had approved an appointment with a dermatologist back in July 2024. (*Id.* at p. 10). At some point, Dr. Green informed Plaintiff that she had ordered ketoconazole steroid cream, but Plaintiff waited over two months for the cream. (*Id.* at p. 8).

On December 22, 2024, Plaintiff had another appointment with Dr. Green. (Doc. 1, p. 8). Dr. Green was rude to Plaintiff and told him to shut up and listen to her. Dr. Green stated that she was ordering Plaintiff's medicated soap that day and that he was scheduled for a dermatology appointment. Plaintiff did not receive the soap until January 8, 2025. (*Id.*).

On January 13, 2025, Nurse Jenn came to Plaintiff's cell and took the medicated soap. (Doc. 1, p. 8). Nurse Jenn stated that the soap could not remain in Plaintiff's possession and that she would "get it" to Plaintiff when he needed more. Plaintiff states that he has always been allowed to keep the soap in his personal possession. Plaintiff complained to Captain Collins, but Collins supported Nurse Jenn's decision. Plaintiff states that his skin condition worsened during his time at St. Clair County Jail. (*Id.*).

On March 13, 2025, Nurse Bonnie came to Plaintiff's cell to have him sign a form so that he could be dispensed new "psyche meds." (Doc. 1, p. 8). Plaintiff told Nurse Bonnie that he did not want the medication and was not going to sign the form. Nurse Bonnie told Plaintiff that "the

feds" would not pay for Plaintiff to continue taking Seroquel, which helps Plaintiff sleep, and so she was providing an alternative. The form included information about the new medication, including side effects. Plaintiff refused the new alternative medication. Medical staff continued to come to Plaintiff's cell every morning and night trying to give him the new psyche medicine, and he repeatedly declined. In the meantime, Nurse Jenn continued to deny Plaintiff soap for his skin condition. (*Id.*).

## PRELIMINARY DISMISSALS

The Court dismisses any intended claim against Nurse Bonnie. Plaintiff claims that Nurse Bonnie brought him a new psyche medicine on March 13, 2025, along with a form to sign explaining the side effects of the medicine. (Doc. 1, p. 8-9). Plaintiff declined to sign the form or take the medicine. Plaintiff's usual psyche medicine, Seroquel, helped him sleep and without it, he did not sleep for the next "3-4 days." (*Id.* at p. 9). The facts, as pled, do not demonstrate that Nurse Bonnie deprived Plaintiff of any constitutional rights during their single interaction on March 13. Accordingly, any intended constitutional claims against Nurse Bonnie are dismissed without prejudice.

The Court also dismisses any further claims associated with the changing of Plaintiff's psyche medication from Seroquel to a different medication. (Doc. 1, p. 9). Plaintiff does not specify who authorized the change in his prescription, and he does not allege that the new medication was less efficacious in treating his medical condition because he never actually took it. Accordingly, he has failed to state a constitutional claim against any named defendant for the switch in his psyche medication.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

> **Count 1:** Fourteenth/Eighth Amendment claim against Dr. Green, Nurse Jenn, and Captain Collins for providing constitutionally inadequate medical care for Plaintiff's skin condition.
>
> **Count 2:** FTCA claim against Dr. Green for medical negligence.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Section 1983 and *Bivens*

This Court must first determine whether Plaintiff has invoked the correct statute when bringing his claims. *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002). Although not stated in the Complaint, it appears that Plaintiff was a federal pretrial detainee and a convicted person during his time at St. Clair County Jail. *See USA v. Vanhook,* Case No. 21-cr-30162-SPM (S.D. Ill.). *Bivens* provides a limited damages remedy for certain federal rights violations caused by federal agents, and Section 1983 imposes federal tort liability on state and local actors. Defendants in this case appear to be state or local actors, and Plaintiff points to no contract between the federal government and local jail that transforms the defendants into federal agents. Therefore, while Plaintiff indicates that he is bringing his constitutional claims under *Bivens* (*see* Doc. 1, p. 1), the Court will treat his claims under Section 1983 at this stage. *See Belbachir v. County of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013) (contract between the Federal Bureau of Prisons and

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

a county jail does not automatically transform a state actor into a federal actor).

The Court also must decide whether to analyze Plaintiff's constitutional claims under the Fourteenth or Eighth Amendment. The proper analytical framework for Plaintiff's claims of constitutional deprivations depends on his status as a pretrial detainee or convicted person at the time of his injury. If he was a pretrial detainee at the time of the alleged events, then his claim is governed by the Fourteenth Amendment objective unreasonableness standard. *See Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018). If he was a convicted person, the claim is controlled by the Eighth Amendment deliberate indifference standard. *Estelle v. Gamble*, 429 U.S. 97 (1976).

In Plaintiff's federal criminal case, Case No. 21-cr-30162-SPM, he was found guilty by a jury on October 23, 2024, of possession with intent to distribute a controlled substance. According to the Complaint, Plaintiff his first interaction with Dr. Green was around October 20, 2024, prior to his conviction, and he had another appointment with Dr. Green following his conviction on December 22, 2024. Plaintiff's allegations regarding the conduct of Nurse Jenn and Captain Collins occur after he was convicted. The Court will therefore analyze Plaintiff's claims against Dr. Green under both the Fourteenth and Eighth Amendments and his claims against Nurse Jenn and Captain Collins under only the Eighth Amendment.

**Count 1**

I. **Dr. Green**

   a. **Fourteenth Amendment Claim**

Plaintiff claims that he was first seen by Dr. Green around October 20, 2024, while he was still a detainee. (Doc. 1, p. 8). During the appointment, Plaintiff explained his skin condition to Dr. Green. Dr. Green stated that she would speak to the medical staff at Jefferson County Jail about how his skin condition was previously treated, and she asked an officer to retrieve the medicated soap that had been placed with Plaintiff's personal property upon so that she could look at it. (*Id.*).

By the next appointment on December 22, 2024, Dr. Green had scheduled a dermatology visit for Plaintiff, and it appears that he had been previously provided his medicated soap because he writes that Dr. Green stated that she would order his soap "again." (Doc. 1, p. 8). Based on these alleged facts, there is nothing in the Complaint from which the Court can plausibly infer that Dr. Green failed to take "reasonable available measures" to address a "risk of serious harm" to Plaintiff's health or safety during this first appointment. *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024). Plaintiff claims that at the October appointment Dr. Green said she would see him again in two weeks, but his next appointment was not until late December. (Doc. 1, p. 10). This fact still fails to allow the plausible inference that Dr. Green's actions in treating Plaintiff prior to his conviction on October 23, 2025, were not objectively reasonable. Thus, he has failed to state a Fourteenth Amendment claim against Dr. Green for the treatment he received from her while he was a detainee.

    b. **Eighth Amendment Claim**

Prison officials may be liable for an Eighth Amendment violation if they are "deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007), acts in a manner contrary to the recommendation of specialists, *Arnett*, 658 F.3d at 753, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2019) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). As with all Eighth Amendment claims, to rise to the level of deliberate indifference, the conduct must be akin to criminal recklessness. *Klebanowski v. Sheahan,* 540 F. 3d 633, 639-40 (7th Cir. 2008). Conduct that is negligent or even grossly negligent does not violate the Eighth Amendment. *See Figgs v.*

*Dawson,* 829 F. 3d 895, 903 (7th Cir. 2016).

As mentioned, Plaintiff's second appointment with Dr. Green was on December 22, 2024, after he had been convicted. He alleges that during this interaction Dr. Green was rude to him and would not let him explain "what her nurses [had] been doing." (Doc. 1, p. 8). Dr. Green informed Plaintiff that his dermatology appointment had been scheduled and that she had re-ordered his soap, which arrived on January 5, 2025, and was given to Plaintiff on January 8, 2025. (*Id.*). At some point, Dr. Green told Plaintiff that she had re-ordered ketoconazole steroid cream, but Plaintiff states that two months passed, and he still had not received it. (*Id.* at p. 8, 10). Following this appointment, Plaintiff did not have another appointment with Dr. Green before he was transferred from St. Clair County Jail on April 3, 2025. (*Id.* at p. 5, 10; Doc. 4, p. 1).

These allegations are not sufficient to state an Eighth Amendment claim against Dr. Green. While Dr. Green may have been rude and unprofessional during this second appointment, there is no indication that she disregarded an excessive risk to his health. Dr. Green order prescription refills and referred Plaintiff to a specialist. Plaintiff seems to take issue with his delay in care – his second appointment with Dr. Green was not until December, he had to wait months for an appointment with a dermatologist, he had to wait over two months to receive the ketoconazole steroid cream, and following the December appointment, he did not "[hear] anything back about anything." (Doc. 1, p. 10). But Plaintiff does not assert that Dr. Green knew he needed a second appointment sooner than December or a follow-up appointment after the December appointment due to the worsening state of his skin condition. There is also nothing in the Complaint indicating that Dr. Green knew Plaintiff was having issues accessing his medicated soap following the December appointment or timely receiving his ketoconazole steroid cream. Because Plaintiff does not describe facts supporting that Dr. Green intentionally or recklessly disregarded his need for additional medical care for his skin condition, he has failed to state an Eighth Amendment claim.

See *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

And finally, Plaintiff has not stated an Eighth Amendment claim by alleging that during the December appointment Dr. Green did not listen when he tried to explain what "her nurses been doing," and was told to "shut up." (Doc. 1, p. 8). This allegation is vague and not sufficient to state a claim. First, Dr. Green cannot be liable for the conduct of other medical staff simply because she has a supervisory role. See *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Second, it is not clear what conduct on the part of the nurses to which Plaintiff is referring, as the actions of Nurse Jenn and Nurse Bonnie described in the Complaint occurred after the December appointment. Plaintiff generally claims that only some of the nurses would replace his tubes of skin cream when asked but does not provide any additional information. (Doc. 1, p. 10). For these reasons, Plaintiff has failed to state an Eighth Amendment claim against Dr. Green, and Count 1 is dismissed against Dr. Green in its entirety.

II.     **Nurse Jenn and Captain Collins**

Count 1, however, will proceed against Nurse Jenn and Captain Collins. Plaintiff claims that on January 13, 2025, Nurse Jenn came to his cell and confiscated his medicated soap and continued to deny him "any soap" to treat his skin condition. (Doc. 1, p. 8, 9). Plaintiff spoke with Captain Collins, but Collins "backed" Nurse Jenn's decision and failed to intervene to ensure that Plaintiff's skin condition was properly treated. These allegations are sufficient to state an Eighth Amendment claim against Nurse Jenn and Captain Collins. See *Gil v. Reed,* 381 F. 3d 649, 661 (7th Cir. 2004) ("[Defendant's] angry and unexplained refusal to give [Plaintiff] his prescribed medication is sufficient to create a genuine issue of fact regarding his state of mind.").

**Count 2**

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, authorizes "civil actions on claims against the United States, for money damages ... for ... personal injury or death

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The only proper defendant in an FTCA action is the United States, and this defendant is not named. 28 U.S.C. § 2679(b)(1). *See also Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *Stewart v. United States*, 655 F.2d 741, 742 (7th Cir. 1981) ("Plaintiff has no cause of action ... [under the FTCA] against an employee, her exclusive remedy being an action against the United States."). In addition, this lawsuit does not involve allegations of misconduct against federal officers. Plaintiff seeks damages against local officials, and as mentioned, such claims are typically brought under 42 U.S.C. § 1983. Count 2 against Dr. Green is dismissed with prejudice for failure to state a claim.

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Nurse Jenn and Captain Collins and is **DISMISSED** against Dr. Green. **COUNT 2** is **DISMISSED**. All claims against Nurse Bonnie are **DISMISSED.** Because there are no surviving claims against Dr. Green and Nurse Bonnie, they shall be **TERMINATED** as defendants on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Nurse Jenn and Captain Collins the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the

full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 9, 2025**

                                                    *s/Stephen P. McGlynn*
                                                    **STEPHEN P. MCGLYNN**
                                                    **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.